The opinion of the Court was delivered by
Wardlaw, Ch.
This proceeding was instituted for the double purpose of obtaining a settlement on the wife of the property recently accruing to her by succession from her sister Elizabeth Murray, upon which the marital rights of the defendant have not attached by possession ; and of obtaining additional allowance to the wife from the husband’s income, by way of alimony, for the maintenance of herself and such of the children of the marriage as depend on her means for support. So far as the former purpose of settlement of the new acquisition of property by the wife, is involved in the pleadings, adequate relief is afforded by the decree, and no complaint is made to us by either party. As to alimony, the Chancellor pronounced his judgment that she was entitled to a decree for this object, principally on the ground of the husband’s desertion and abandonment, without contributing to the support of herself and children ; but limited the allowance for alimony to the rent of the Laurens street house, without report of a Master or any complete ascertainment of the extent of the husband’s income. The plaintiff, wife, appeals as to the extent of this allowance, complaining substantially that the decree makes to her a very inadequate allowance, when the extent of the husband’s income and the circumstances of aggravation in his conduct, particularly his adultery with Mary Ellis, are properly considered.
We have a general impression that the allowance is inadequate under the circumstances of the case, but we cannot venture to prescribe any additional fixed sum until we know *424 more precisely the extent of the income of the husband and wife respectively; and we desire the aid of further evidence and a report from the Master on these particulars.
The amount of alimony depends largely on the extravagance of the husband’s misconduct. Unquestionably his misconduct in this case has been great and without any excuse apparent in the evidence. He has left his wife without pecuniary contribution on his part, to settle two of his daughters in respectable marriages, and to procure remunerative occupations for some of his sons. He vilipends in his answer his wife as rendering a separation from her necessary, by reason of her drunkenness, and offers no testimony in support of the’ vile charge. He refuses to recognize any claim of his daughters on him, whether presented by written request by one who was sick for flannel to protect her person, or by another to shake hands with him in the street.
But the great matter of aggravation is the alleged adultery of defendant with Mary Ellis. On this point, the Chancellor, while admitting strong grounds of suspicion, expresses doubt as to the sufficiency of the proof. For myself, I concur in his view, that the testimony of the two strumpets should be struck from the case, and treated as not offered or utterly inefficacious in leading to judgment, but we have very respectable opinions that the testimony of infamous witnesses if producing belief must be regarded. Granting, however, that the testimony of Shepherd and Gaskin (although primarily discredited by Ford, an equally infamous witness,) be erased from the record, enough remains to satisfy us that, as practical men, determining on the affairs of mankind, we must conclude the adultery. It is very distasteful to proceed through the details, but we must to some extent justify our conclusion.
The defendant in his answer does not deny'the adultery. His answer is casuistically evasive. He does deny that he lived in “open” adultery with Mary Ellis, and that “he recognized or treated ” her as his kept mistress,'or that there *425 was “any familiarity or sociability” between them which would have rendered the visits to his separate establishment by his wife and children unseemly; but all this amounts merely to an expression of sentiment on his part that he was not so flaunting his adultery in the eyes of the community and his family as to make visits of respectable females to him compromise their character. In substance he denies notoriety of the illicit intercourse, and by negative pregnant, admits the existence of the intercourse. Again, he admits that an unmarried white female, still retained in his employment, was delivered on his premises of a bastard, (and another bastard seems to have been subsequently produced by her under similar circumstances,) and he says “ it is impossible for him to say, and he does not know who is the father of the said child.” It may well have been impossible for him to say who was the father of the child, if he suspected others to have intercourse with his paramour, but it was surely possible for him to say, if he had no illicit intercourse with Mary Ellis, that whoever might be, he was certainly not the father of her offspring. And why was she not produced bjr him to contradict the adultery, if her testimony could have been effective ?
The positive testimony satisfies us of the fact of adultery. Mrs. McLaughlin, an unimpeached witness, deposes as to facts inconsistent with any other conclusion. Besides that, the testimony of the defendant’s witnesses, especially of his nephew, Thomas Thompson, concerning instances of familiarity in the master’s lying on the bed of his servant and fondling her brats — indeed, without pursuing needlessly disgusting details, every portion of the testimony on the point, without a particle of contradiction, compels the conclusion that the defendant is living in degrading concubinage with his menial servant.
Now, we cannot punish him as an ecclesiastical court might for his sin, but we may properly consider his miscon *426 duct as entitling the wife and children, whom he has abandoned, to a large share of his income.
Probably, in expectation of our conclusion as to the fact of defendant’s adultery, it was urged that adultery on the part of a husband is much more venial than in the case of the wife, because the latter might impose on the couple spurious offspring for support, succession and inheritance, while the former could have no such consequence. The distinction in the cases of wife and husband is just and well recognized. It may be that occasional acts of adultery on the part of a husband, palliated by long and necessary absence from his wife, or other strong circumstances of temptation, might not entitle the wife to separation and alimony; but where a husband deserts and abandons his wife and lawful children, and lives in the same city in concubinage with a servant, begetting bastards on her body, he has little claim to the indulgence of any tribunal which proceeds for th,e enforcement of law and morals.
This whole matter as to the extent of alimony depends on the circumstances of each particular case ; and we have not the means of information in this cause to determine the precise amount which should be allowed. Counsel differ widely in their estimates of the incomes of husband and wife; and they differ as to the sources from which the estate of the husband has been derived, whether from his labor or accretion from his wife’s estate at the date of the contract of marriage. These particulars have necessary influence on the amount of alimony to be allowed. The doctrine on the subject is well summed up by Bishop in his treatise on Marriage and Divorce, section 612. The conjugal conduct of the parties, the extentmf their respective incomes, the sources of these incomes from husband or wife, the- condition in Ijfe of the innocent party without diminution from the degradation of the consort who has sinned — all these circumstances enter into the amount of just allowance for alimony. In some of these particulars we lack information. Besides it seems to us clear *427 that the plaintiff, by way of what is called temporary alimony, or by any other name, is entitled to reimbursement for her expenses in a successful litigation.
It is ordered and decreed that it be referred to Master Tupv per to inquire and report as to the extent of the incomes respectively of the parties to'this cause, as to the sources of their derivation, and as to the expenses of the plaintiff in this litigatiop; and that he recommend to the Court what is a suitable allowance to the plaintiff for alimony under all the circumstances of the" case. Tn the meantime the plaintiff must be protected in the enjoyment of the use or rent of the Laurens street house, which has been allowed to her by the Chancellor.
It is further ordered that the circuit decree be reformed according to this opinion.
Johnston and Dunkin, CC., concurred.
Decree reformed.